IN RE HOWARD.

(No. C-860266—Decided
February 18, 1987.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Christian J. Schaefer* and *Judith A. Anton,* for appellee state of Ohio.
*Robert L. Cloud,* for appellant.

BLACK, J. Appellant Shawn Howard appeals from the finding of the Juvenile Division of the Hamilton County Court of Common Pleas that he is a "delinquent child" under R.C. 2151.02 (A) because he aided and abetted another juvenile in a robbery. He was committed to the temporary custody of Hillcrest School on the same day he was found delinquent.

Appellant presents four assignments of error, the first three of which are addressed to pretrial orders of the juvenile division: refusal to dismiss the complaint for failure to charge an offense; failure to suppress all evidence flowing from an unlawful arrest; and failure to suppress an impermissibly suggestive identification. The fourth assignment of error essentially attacks the judgment as being against the weight of the evidence. We find no merit

in any of the assignments of error and overrule all four.

In the first assignment of error, appellant contends that the complaint failed to state a charge against him under R.C. 2923.03[1] because the complaint did not set forth accurately the degree of culpability required by that statute. The body of the complaint reads as follows, with the key word underlined for emphasis:

"PO D. Luken D-1 being first duly cautioned and sworn, deposes and alleges that (s)he has knowledge, information and belief that Shawn Howard, born 1/8/70, is a delinquent child, as provided in Section 2151.02 ORC, in that on or about 11/4/85 [at] 1500 [hours], in Hamilton County, State of Ohio, (s)he did *knowingly* aid Michael Brown to commit the offense of Robbery 2911-02 ORC contrary to and in violation of Section 2923.03 of the Ohio Revised Code, a felony of the 2nd degree." (Blank spaces and asterisks omitted; emphasis added.)

Appellant's contention is that the allegation of *knowingly* aiding Michael Brown is not sufficient in that R.C. 2923.03 requires that the aiding and abetting shall be "with the kind of culpability required for the commission of [the] offense" in which the accused participated, and the offense was robbery. Robbery, appellant argues, involves theft, and theft in turn requires proof of a *purpose* to deprive the owner of property or services. The issue raised by the first assignment of error is whether the complaint states any offense at all, and in this respect it is similar to, and will be reviewed in the same way as, a motion to dismiss a civil complaint under Civ. R. 12(B)(6) for failure to state a claim upon which relief can be granted.

A delinquent child, under R.C. 2151.02(A), is one "[w]ho violates any law of this state," and a minor accused of being delinquent is obviously entitled to know what law he is charged with violating. The pertinent part of Juv. R. 10(B) that sets forth the required contents of a complaint mandates that it shall:

"(1) State in ordinary and concise language the essential facts which bring the proceeding within the jurisdiction of the court and in juvenile traffic offense and delinquency proceedings shall contain the numerical designation of the statute or ordinance alleged to have been violated[.]"

In the instant delinquency proceeding, the numerical designations of both the complicity statute and the robbery statute are set forth, so that the question is whether the other allegations of the complaint are legally sufficient.

We believe they are sufficient. The complaint plainly states that the appellant was charged with complicity in robbery. All reasonable, ordinary persons could understand that.

The specification of "knowingly" as the degree of culpability was not, in our judgment, fatally defective. Robbery is, under R.C. 2911.02(A),[2] the use (or threat of immediate use) of force while attempting or committing a *theft offense* or fleeing after an attempt or a completed offense. A *theft offense* as defined in R.C. 2913.01(K)[3] is any one of twenty-

---

[1] R.C. 2923.03 reads in pertinent part:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"* * *

"(2) Aid or abet another in committing the offense[.]"

[2] R.C. 2911.02 reads in full:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall use or threaten the immediate use of force against another.

"(B) Whoever violates this section is guilty of robbery, an aggravated felony of the second degree."

[3] R.C. 2913.01(K) reads in full:

six named Ohio offenses, plus innumerable other offenses under other laws that are substantially similar to those twenty-six, as well as all conspiracies, attempts and complicities. *Theft* as defined in R.C. 2913.02[4] is not the only "theft offense." Even if it were, theft involves two culpable mental states, inasmuch as theft is *knowingly* obtaining or exerting control over property or services under specified conditions (without consent, beyond scope, by deception, or by threat) with the *purpose* to deprive the owner of the property or services. Other theft offenses have the same multiplicity of degrees of culpability, while still others require only one. For instance, the three burglaries require a purposeful trespass. R.C. 2911.11, 2911.12, and 2911.13.

We decline to hold that a delinquency complaint filed in the juvenile division can be sufficient only if it specifies exactly what theft offense was committed or attempted, along with the specific degree or degrees of culpability applicable to that theft offense. To do so would impose a hypertechnical requirement not required by the function and purpose of a delinquency complaint and not required for an indictment or complaint against an adult. Cf. *In re Burgess* (1984), 13 Ohio App. 3d 374, 13 OBR 456, 469 N.E. 2d 967. The complaint under scrutiny meets the requirements of Juv. R. 10(B). The first assignment of error is meritless.

The last three assignments of error are grounded on evidence presented at a pre-adjudication hearing on appellant's two motions to suppress and at the adjudication hearing itself. We summarize the evidence at both hearings.

At approximately 2:50 p.m. on November 4, 1985, a group of about twelve teenaged black males rushed into a retail store at 620 Vine Street, Cincinnati, known as Sporting Foot And Things. They seized jogging suits from the racks, ignored the orders and demands of the single salesclerk, dragged her away from the telephone she was trying to use to call the police, and eventually knocked her to the sidewalk outside the store. The group then broke up and fled in several directions. The salesclerk made a report to the police, describing the assailants in general terms, and she made an inventory that disclosed twelve warm-up suits were stolen. Police Officer DeSalvo took parts of the report.

---

"(K) 'Theft offense' means any of the following:

"(1) A violation of section 2911.01, 2911.02, 2911.11, 2911.12, 2911.13, 2911.31, 2911.32, 2913.02, 2913.03, 2913.04, 2913.11, 2913.21, 2913.31, 2913.32, 2913.33, 2913.40, 2913.41, 2913.42, 2913.43, 2913.44, 2913.45, 2913.47, 2913.48, 2913.51, 2913.81, 2915.05, 2915.06, or 2921.41 of the Revised Code;

"(2) A violation of an existing or former municipal ordinance or law of this or any other state or the United States substantially equivalent to any section listed in division (K)(1) of this section;

"(3) An offense under an existing or former municipal ordinance or law of this or any other state or the United States involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud;

"(4) A conspiracy or attempt to commit, or complicity in committing any offense under division (K)(1), (2) or (3) of this section."

R.C. 2913.47 and 2913.48 were repealed by H.B. No. 632 (140 Ohio Laws, Part II, 4284).

[4] R.C. 2913.02(A) reads:

"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

"(1) Without the consent of the owner or person authorized to give consent;

"(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;

"(3) By deception;

"(4) By threat."

The next afternoon as Officer DeSalvo was on patrol in the downtown area, he heard a radio report by Police Officer Beal that a group of young blacks wearing jogging suits had created a disturbance at Seventh and Race Streets, Cincinnati, and then fled in several directions. Officer DeSalvo drove to the area where the group was last seen and observed appellant and another young black male turn away from him and proceed to a bus. He arrested them on the basis of his knowledge about the robbery and the radio report.

Appellant was one of eighteen young blacks who were brought to police district headquarters. The salesclerk from Sporting Foot And Things was called in and asked to observe them in a line-up. The procedure used was to place five at a time (three in the fourth group) in a small room where she could observe them through a window narrowed so as to expose her eyes and not her full face. She testified as follows:

"There were boys that I had never seen before, there were boys who I had seen before who had not stolen from me, and there were boys who I had seen before and did steal from me."

She identified as assailants in the robbery four from the first group including appellant, two from the second, one from the third, and none from the fourth (seven out of eighteen). She stated that she recognized appellant immediately and without hesitation, and this was confirmed by the officer who stood with her during the identification procedure. The officer made notes on a sheet of paper listing the names of all eighteen teenagers; some of those notes suggested a degree of hesitancy about several of the suspects, but the record on appeal does not contain that sheet of paper. It does contain pictures of the four groups with each individual identified by name. The seven teenagers that she identified as assailants were charged with participating in the robbery. Appellant's case was heard separately.

At both the suppression hearing and the adjudication hearing, the salesclerk was positive in her identification of appellant as one of the robbers; she saw him remove a jogging suit from the racks and flee with it. She knew him by sight because he had been in the store several times over the months before the robbery; she said he was in the store about once a week for six months.

Appellant conceded he had been in the store but he said it was only twice before the robbery. His defense was alibi. He testified that he was not in Sporting Foot And Things during the robbery, but that he was on his way by public transportation from his home in North Fairmount to his grandmother's house in Walnut Hills and was in the downtown area only long enough to transfer from one bus to another. He went to help his grandmother to install storm windows on her house, not being in school because he had been suspended for ten days. He stayed overnight with his grandmother and was returning to his own house when he was arrested while transferring between busses in the downtown area. He was wearing a jogging suit, but it was not one of those stolen from the sporting goods store the day before.

We hold that appellant's warrantless arrest was on probable cause. Officer DeSalvo had sufficient information derived from trustworthy sources (both the victim of the robbery and the radio call from a fellow officer) to warrant a prudent man in believing that a felony had been committed and that appellant was one of the perpetrators. *State* v. *Timson* (1974), 38 Ohio St. 2d 122, 67 O.O. 2d 140, 311 N.E. 2d 16; *State* v. *Fultz* (1968), 13 Ohio St. 2d 79, 42 O.O. 2d 259, 234 N.E. 2d 593. We believe that to hold otherwise would place law

enforcement personnel under limitations that would unduly impede their duties. The information available to the arresting officer was that a gang of black teenagers in jogging clothes had victimized a store on one day and that on the next day, a gang of black teenagers in jogging clothes was creating a disturbance in the same area and fleeing from police in several directions as had been done the day before. In balancing the need to protect the public against robberies on the one hand, and on the other, the rights of citizens including black teenagers to proceed undisturbed on public streets, we believe that the scale clearly moves in favor of law enforcement in this instance.

We have no difficulty with the identification procedures. The salesclerk was not led in any way by the police to choose one suspect over any other, and while she knew that the police suspected some of the robbers were in the group she was asked to observe, that aspect of the procedures is inherent in the situation and not "impermissibly suggestive." We hold that the in-court identification of appellant was reliable under the totality of the circumstances.

Finally, the evidence was amply sufficient to support the finding that appellant had violated an Ohio law and was delinquent. There was a conflict in the evidence, as there always is when a defendant claims an alibi, but we hold that the court did not err and commit a manifest miscarriage of justice when it resolved that conflict against appellant. *State* v. *Martin* (1983), 20 Ohio App. 3d 172, 20 OBR 215, 485 N.E. 2d 717.

We affirm.

*Judgment affirmed.*

SHANNON, P.J., and KLUSMEIER, J., concur.